NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHAN BRUMLEY, individually and on behalf of all similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> CAMIN CARGO CONTROL, INC., <br><br> Defendant. | Civil Action No.: 08-1798 (JLL) <br><br> OPINION |

For the Plaintiff: Michael J. D. Sweeney (*Getman & Sweeney, PLLC*)
            Matthew Dunn (*Getman & Sweeney, PLLC*)
            Patrick J. Monaghan (*Monaghan, Monaghan, Lamb & Marchisio*)

For the Defendant: Patrick McGovern (*Genova Burns*)
             Jennifer Borek (*Genova Burns*)
             Eric W. Ruden (*Genova Burns*)

**LINARES, District Judge.**

This matter comes before the Court on the cross-motions for summary judgment [CM/ECF #137, 141] filed by Defendant Camin Cargo Control, Inc. ("Camin" or "Defendant") and Plaintiffs. Also before the Court at this time is Plaintiffs' motion to strike [CM/ECF #149]. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendant's motion is denied and Plaintiffs' motions are granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Camin samples, inspects,

tests and certifies petroleum products at U.S. market ports of entry. It provides services 24 hours per day, 365 days per year. Camin's operations are subject to the vicissitudes of the industry in which it works, and must respond to requests on its customers' schedules. Its inspectors perform their tasks both aboard customers' ships and on shore at customer facilities.

Camin's inspectors work six days on duty and then receive either two or three days off before the cycle repeats. The inspectors log hours for work during pay periods, and the records indicate that in some weeks they work less than forty hours, while in other weeks they work more than forty hours—once as many as ninety-two hours.

In 2000, the Department of Labor ("DOL") investigated Camin's Corpus Christi, Texas office concerning Camin inspectors working out of that office; Camin had not paid its inspectors overtime prior to 2000 because it believed that the inspectors were exempt employees. The DOL investigation resulted in Camin classifying its inspectors as non-exempt, and Camin began paying them overtime under the fluctuating work week method[1] ("FWW") of calculating overtime. Under the FWW system of calculating overtime, an individual is paid a flat, fixed rate for all hours up to forty in a given week, and then compensated by an additional overtime premium for each hour of overtime worked over forty.

Camin's use of the FWW to calculate inspector overtime in 2000 mandated paying its inspectors at a weekly rate, plus overtime, plus additional lump-sum payments for foregoing holidays and vacation days. The overtime calculation used by Camin excluded these additional holiday and vacation day payments from increasing the amount of the overtime payments for weeks in which an inspector worked a holiday or a vacation day and also worked more than forty

---

[1]The fluctuating workweek method will be analyzed in detail <u>infra</u>.

hours. Camin's 2000 overtime policy operated as follows:

> **A - Weekly Pay** = Semi-monthly pay multiplied by 24 (number of paychecks issued) and then divided by 52 (number of weeks in a year)
> **B - Regular Hourly Rate** = Weekly pay divided by the total hours worked in a given workweek.
> **C - Overtime Hours** = Total hours worked in a given work week in excess of 40.
> **D - Overtime Pay** = Overtime hours multiplied by half of the Regular Hourly Rate.

(Def. R. 56.1 Statement ¶ 21.)

In 2001, the DOL investigated Camin's Chelsea, Massachusetts office. The DOL investigation was resolved by the payment of $13,700 to two inspectors. The DOL investigation and settlement did not result in any discussion between Camin and the DOL concerning the use of holiday pay bonuses to inspectors who worked holidays when payed under Camin's implementation of the FWW method.

Camin revised its payment policy in 2002. The 2002 policy calculated overtime using the same method as the 2000 policy, and instituted a new incentive payment, a lump-sum day off pay similar to the holiday pay and vacation day pay previously instituted. Under the 2002 policy, holiday pay was a $50 lump sum, and the day off pay bonus began as a $50 payment and then varied after 2008. Additional per diem payments for off-shore duty at some offices and a lead inspector incentive have also been paid under the 2002 policy. The 2002 policy was in place until 2009.

During the years 2003 through 2005, Camin had an attorney review some of its employment documentation and practices. Camin also had an employee, its Accounting Manager, who was responsible for monitoring developments in wage-and-hour compliance.

In March 2009, Camin issued a new pay policy for its inspectors. The 2009 policy included day off pay and holiday pay in the "regular rate" used to calculate overtime payments, and thus increased the amount of overtime paid to inspectors during weeks when they received the holiday and day off payments.

The parties dispute the accuracy of the payroll records Camin has, as Camin asserts that the inspectors routinely inflated their hours, while Plaintiffs maintain that Camin approved the records. (Pl. Opp. R. 56.1 Statement § 82.) The parties dispute many other facts concerning what the Camin payroll records show, including whether or not impermissible deductions were made from the inspectors' fixed salaries. (Def. Reply Br. at 5-6.) The parties also disagree as to the understanding reached between Camin and the Plaintiffs as to the nature of their fixed salaries and overtime payments.

This suit was filed on April 11, 2008. Motion practice ensued concerning conditional certification and extending the opt-in deadline for Plaintiffs. The instant motions were filed in March, 2010.

## DISCUSSION

### I.     Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**II.     Camin's Entitlement to Pay Inspectors Under the Fluctuating Work Week Regulation**

Congress passed the FLSA in 1938 in order to "achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, et al., 321 U.S. 590, 602 (1944). The FLSA ensures that

> no employer shall employ any of his employees who in any workweek [are] engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Regulations promulgated by the Department of Labor, however, provide for an alternative means of calculating this overtime in certain situations. This alternative means

of calculating overtime is known as the fluctuating workweek ("FWW") and is governed by 29 C.F.R. § 778.114. That regulation permits payment of a fixed salary plus half-time pay—0.5x the hourly rate—for each hour of overtime worked over forty hours in a given week if certain conditions are met. 29 C.F.R. § 778.114(a).

The conditions required by the regulation in order for an employer to utilize the FWW are:

> 1) Plaintiffs' hours fluctuate from week to week, 2) Plaintiffs receive a fixed salary that does not vary with the number of hours worked during each workweek (excluding overtime premiums), 3) the fixed amount received by Plaintiffs provides compensation every week at a regular rate that is at least equal to the minimum wage, and 4) that Defendants and Plaintiffs share a 'clear mutual understanding' that Defendants will pay that fixed salary regardless of the number of hours worked.

29 C.F.R. § 778.114(a); Adeva v. Intertek USA, Inc., No. 09-1096, 2010 WL 97991, at *2 (D.N.J. Jan. 11, 2010). Once the FWW is in use, the employer must actually pay the 50% overtime rate in addition to the fixed weekly payment.[2] Griffin v. Wake County, 142 F.3d 712, 715 (4th Cir. 1998). The parties do not dispute the first and third requirements, but cross-move for summary judgment on the second and fourth. Plaintiffs also allege that Defendant failed to actually pay the fixed salary plus overtime. (Pl. Opp. Br. at 6.) Because all of the requirements must be met in order for the FWW to apply, however, Camin can only succeed on summary judgment with respect to the FWW if the undisputed material facts demonstrate that it is entitled to the FWW, while Plaintiffs will succeed if they can demonstrate that there is no factual dispute

---

[2]This last requirement is briefed by the parties as the fifth prerequisite to use the FWW.

that one of the requirements was not met.

Defendant argues that it was permitted to pay inspectors under the FWW even though it deviated from the fixed weekly payment requirement by providing extra "holiday pay" and "day off pay" to inspectors working on holidays and their scheduled days off. (Def. Br. at 12-21.) Defendant also argues that a clear and mutual understanding existed between it and its inspectors about the use of the FWW. (Def. Br. at 22-24.) Plaintiffs maintain that the prerequisites to utilizing the FWW method of calculating pay must be complied with in order to obtain the benefit of the regulation; that Camin's docking of employee's pay for missing work violated the FWW; and that the inspectors and Camin reached an understanding regarding their pay which deviated from the regulatory requirements for the FWW to apply. (Pl. Opp. Br. at 6-10, 14, 16-17.)

### A. Decrease of Pay Under the Fixed Salary Requirement

With respect to decreases in the fixed salary, regulation calls for a fixed salary regardless of the length of the workweek. 29 C.F.R. § 778.114 ("An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many."). An employer may deduct from an FWW employee's vacation time bank for workdays missed, but may not deduct from the fixed salary for time an FWW employee misses from work. DOL Opinion Letter, 1999 WL 1002399 (May 10, 1999). Similarly, the DOL stated that "it is the longstanding position of the Wage and Hour Division that an employer utilizing the fluctuating

workweek method of payment may not make deductions from an employee's salary for absences occasioned by the employee[,]" unless the deductions are of a nonroutine disciplinary nature "for willful absences or tardiness or for infractions of major work rules." DOL Opinion Letter, 2006 WL 1488849 (May 12, 2006).

Several of the cases cited by the parties are not on point with respect to the issue of salary decreases under the FWW. Although Aiken v. County of Hampton discusses the FWW, its ruling on the fixed salary requirement relates to deductions from accrued vacation banks and the effect of legal holidays that are not at issue in the instant matter. 977 F.Supp. 390, 395-97 (D.S.C. 1997). Lance v. Scotts Co. addresses the effect of commissions on FWW calculations, something governed by 29 C.F.R. § 778.118, a regulation not at issue here. No. 04-5270, 2005 WL 1785315, at *4-7 (N.D. Ill. Jul. 21, 2005) (Keys, M.J.). Rau v. Darling's Drug Stores, Inc. addresses not the existence of a fixed weekly payment, but the correct calculation of damages for a non-exempt, salaried employee. 388 F.Supp. 877, 883-86 (E.D. Pa. 1977). In Spring v. Washington Glass Co. the parties stipulated to the use of the FWW to calculate overtime pay damages, so the issue of whether it applied was never contested before that court. 153 F.Supp. 312, 318-19 (W.D. Pa. 1957).

Defendant does, however, cite Cash v. Conn Appliances, Inc., 2 F. Supp 2d 884, 906 (E.D. Tx. 1997), which supports the proposition that it did not violate the FWW when it docked inspectors for missing work. Cash read the regulation as permitting an employer to dock pay when an employee failed to show up for scheduled work. 2. F. Supp 2d at 906 ("The docking policy only called for a loss of pay for absences during scheduled time; it in no way sanctioned reducing pay because of a failure to assign a coefficient employee forty hours of work for a

week."). Cash also holds that occasional violations of FWW requirements do not result in a broad invalidation of the method when calculating damages. Id. This Court fails to find the Cash interpretation of the regulation persuasive as to docking of employees' pay. First, the regulation itself specifies that the fixed salary must be paid regardless of hours worked without reference to which party is responsible for the shortfall. 29 C.F.R. § 778.114 ("The 'fluctuating workweek' method of overtime payment may not be used unless . . . the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked."). Second, the DOL's interpretation of the regulation denies employers the ability to routinely dock the fixed FWW salary. DOL Opinion Letter, 2006 WL 1488849 (May 12, 2006); DOL Opinion Letter, 1999 WL 1002399 (May 10, 1999).

Here, Defendant concedes that on at least one occasion, it docked a Plaintiff inspector's fixed salary for an impermissible reason. (Def. Reply Br. at 6.) Although it characterizes such an event as statistically insignificant, such an argument goes to weight. This Court, therefore, denies summary judgment to Defendants on the issue of whether they complied with the FWW method of paying the Plaintiff inspectors.

      **B.**     **Increases in Pay Under the Fixed Salary Requirement**

The relevant language in the regulation regarding additional payments to FWW employees reads as follows: "[w]here all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more." 29 C.F.R. § 778.114(c). Department of Labor ("DOL") Opinion Letters interpreting the

FWW regulation have weighed in on the issue of additional payments. The DOL has stated that an employer can make additional payments to an FWW employee for a holiday occurring in a given week. DOL Opinion Letter, 1999 WL 1002399 (May 10, 1999). An employer may also pay employees more than the minimum calculated rate under the FWW method for overtime. DOL Opinion Letter, 2002 WL 32255314 (Oct. 31, 2002).

Courts interpreting the FWW, however, have emphasized that additional payments can result in the finding that there is no fixed salary. Although the court in O'Brien v. Town of Agawam found that variations in the weekly pay of law enforcement officers for other reasons prevented the finding of a fixed FWW salary, it used this reasoning with regard to incentive payments:

> The officers' compensation varies from week to week even without reference to the number of hours worked. Any officer required to work a nighttime shift receives money-expressly termed "additional compensation" under the CBA-in the form of a $10 shift-differential payment added to his check for the week. The Supreme Court has specifically held that such shift differentials, when paid, are part of the worker's regular rate of pay. Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 468-69 (1948). So while the shift differential itself may be small, it requires the larger conclusion that most officers do not receive a "fixed amount" for their straight-time labor each week.

350 F.3d 279, 288-89 (1st Cir. 2003). See also Dooley v. Liberty Mut. Ins. Co., 369 F. Supp 2d 81, 86 (D. Mass. 2005) (following O'Brien). Similarly, Ayers v. SGS Control Servs., Inc. found that employees performing similar work to the inspector Plaintiffs in this case did not receive a fixed salary because they received lump-sum "day-off pay" and "sea pay" for working on their days off and on offshore vessels. No. 03-9077, 2007 WL 646326, at *8-10 (S.D.N.Y. Feb. 27,

2007). Finally, a case in this District, Adeva v. Intertek USA, Inc., stands for the proposition that shift premiums preclude application of the FWW. No. 09-1096, 2010 WL 97991, at *2-3 (D.N.J. Jan. 11, 2010) (Chesler, J.). "The record demonstrates that Plaintiffs' compensation for non-overtime hours varied, depending upon earned offshore pay, holiday pay or day-off pay. The Court is convinced that due to such payments, Plaintiffs cannot receive the fixed salary required to apply the FWW." Id.

Some of the cases brought forth by Defendant are inapposite. See, e.g., Clements v. Serco, Inc., 530 F.3d 1224, 1230-31 (10th Cir. 2008) (commissions under the FWW); Lance, No. 04-5270, 2005 WL 1785315, at *4-7 (same). Two, however, are potentially instructive. In Cash, discussed supra, the court found that the defendant had failed to incorporate bonuses into its calculation of the regular rate, thereby decreasing plaintiffs' overtime, but that such failure was considered insufficient to deny the defendant the benefit of the FWW. 2 F. Supp 2d at 893 n.17, 896, 908. The court in Aiken found that an employer's payment of holiday pay to a law enforcement officer who worked on a holiday did not result in the absence of a fixed salary. 977 F.Supp. at 399-400. The reasoning used in Aiken was that the employee would have received the holiday pay anyway, regardless of whether or not the employee worked the holiday, and that the holiday pay simply operated as a permissible increase in overtime pay under the circumstances. Id.

This Court finds that Cash and Aiken can be distinguished on their facts. Cash dealt with employees of an appliance store; Aiken dealt with law enforcement personnel. The only cases brought to this Court's attention that deal with inspectors similar to Plaintiffs are Ayers and Aveda, and this Court finds their reasoning persuasive as to the applicability of the FWW to this

case, not only because of the factual similarity, but because they give meaning to the plain language of 29 C.F.R. § 778.114. Plaintiffs were paid day off pay and holiday pay in addition to their regular salary and overtime. (Def. R. 56.1 Statement ¶¶ 15, 39, 41.) For example, Camin concedes that the use of day off and holiday pay resulted in the one inspector's non-overtime earnings varying from $1,670 to $2,170 over two pay periods. (Def. Opp. R. 56.1 Statement § 23.) Such a scheme results in the absence of the "fixed salary" required by the regulation. 29 C.F.R. § 778.114(a); Aveda, No. 09-1096, 2010 WL 97991, at *2-3. This Court therefore grants Plaintiffs' motion for summary judgment on the issue of whether Defendant's policies and practices violated the FLSA due to the absence of the fixed salary requirement, and declines to reach the remaining arguments of the parties on the FWW. Aveda, No. 09-1096, 2010 WL 97991, at *3.

### III. Computing Damages Under the FWW Method

Camin moves this Court to find that any liability it is subject to for violation of the FWW method of calculating pay be done so according to the FWW method. (Def. Br. at 24-27.) It maintains that such a measure of damages is permissible where the violation is computational as opposed to a violation of the clear understanding requirement or the minimum wage. (Id. at 24-25.) Plaintiffs argue that such a damages calculation is impermissible where a prerequisite to the FWW has not been met by the employer. (Pl. Opp. Br. at 24-26).

The primary case relied upon by Camin is Cash. The discussion of the FWW in Cash is quite broad, and describes the measure of damages available in FWW claims under many factual scenarios. 2 F. Supp 2d at 896-97. Cash noted that under the FWW, "[l]iability arises if the

employer either miscomputes overtime pay or uses the fluctuating workweek method despite the absence of one or more of the criteria for doing so[,]" but differentiated between the types of violation in which damages were available. Id. at 896. The discussion of the available remedies breaks down into two broad categories: those where the measure of damages would be calculated under the FWW and those where overtime compensation would be adjusted so that it would be recalculated at the default FLSA rate of "time-and-a-half" overtime. Id. The following violations were permitted damages calculations under the FWW in Cash: "[e]mployer infrequently violated the minimum wage criterion and failed to cure its breaches fully[,]" "[e]mployer infrequently violated the minimum wage criterion and made no effort to cure its breaches[,]" and "[e]mployer made a computational mistake." Id. at 896-97. Cash found that the following violations abrogated the FWW: "[e]mployer regularly violated the minimum wage criterion" and "[e]mployer violated the clear understanding criterion, full schedule criterion or both." Id. at 896. The Cash court only considered failure of an employer to provide a fixed salary insofar as such a failure would lower overtime rates. Id. at 896.

Although this Court finds the discussion of damages in Cash useful, it is not entirely persuasive. This Court found supra that the fixed salary requirement of the FWW was violated. The regulation states that the fixed salary is a prerequisite to use of the FWW method. 29 C.F.R. § 778.114(c). The Cash court found that when other prerequisites of the FWW method were systematically violated, that the employer could not obtain the benefit of the FWW in calculating damages, but failed to reach the same conclusion concerning the fixed salary. Id. at 896. Instead, this Court finds the pre-trial motions opinion in Ayers v. SGS Control Servs., Inc. persuasive. No. 03-9078, 2007 WL 3171342, at *1-3 (S.D.N.Y. Oct. 9, 2007) ("Ayers II"). In Ayers II, the

Court found that as the defendant had violated the fixed salary requirement of the FWW method, it could not have damages calculated under the FWW method. No. 03-9078, 2007 WL 3171342, at *2. The Court held that the proper measure of damages was the default FSLA method: "time-and-a-half for all hours over 40." Id. at *3. This Court finds that the default FSLA damages calculation, "time-and-a-half for all hours over 40," will also apply to Plaintiffs who have suffered FWW violations in this case, and that summary judgment on this issue is denied to Defendant.

**IV.     Liquidated Damages**

The parties cross-move on the issue of liquidated damages under the FSLA. Defendant argues that because the legal environment around the FWW is uncertain and it acted reasonably and in good faith, liquidated damages should be denied. (Def. Br. at 28-32.) Plaintiffs argue that they are entitled to statutory liquidated damages based on the strong presumption that they are available in FLSA cases. (Pl. Br. at 30-35.)

The FLSA provides that employers violating the overtime payment provision of 29 U.S.C. § 207 are liable for liquidated damages equal to the amount of compensatory damages. 29 U.S.C. § 216(b). "The liquidated damages provision amounts to a Congressional recognition that failure to pay the statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due." Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (footnote omitted). The award of liquidated

damages, however, is not always automatic: "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof" subject to the applicable statutory limit on liquidated damages. 29 U.S.C. § 260. In order for this Court to exercise its discretion to deny punitive damages, however, a defendant bears the burden of demonstrating that it acted in subjective good faith on objectively reasonable grounds before denying liquidated damages. Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907-08 (3d Cir. 1991). A district court must make findings prior to exercising its discretion on liquidated damages. Martin, 940 F.2d at 907.

      This Court finds that while Camin has come forward and attempted to supply "plain and substantial evidence" concerning its good faith and reasonable steps taken to comply with the FLSA overtime payment requirements, material issues of fact remain to be determined before this Court can exercise its discretion. Id. First, the parties dispute whether or not Camin took affirmative steps to comply with the law. The record indicates that Camin only instituted the FWW method on the recommendation of the DOL after the Corpus Christie investigation in 2000. The record, however, also shows that it sought the advice of counsel as to some of its wage and hour issues, and had designated its Accounting Manager to address wage and hour concerns. Unfortunately, the record is sparse as to the advice received from the attorney, and this Court finds that the additional development of the record on such issues as credibility would be required prior to making a decision on the good faith employed by Camin. Although this Court is aware of the reasoning employed in Adeva, which concluded that the legal environment was too

uncertain to apply liquidated damages, Advea found that it was undisputed that counsel had approved defendant's implementation of the FWW. No. 09-1096, 2010 WL 97991, at *3. In this case, however, the parties dispute whether or not the attorney consulted rendered an opinion on the wage and hour dispute at issue here, based on the limited contact between the attorney and Camin. (Pl. Opp. R. 56.1 Statement ¶ 72.) This Court, therefore, finds that it would be premature to rule on the issue of liquidated damages until testimony can be tested at trial, and denies summary judgment to both Plaintiffs and Defendant on this issue.

V.      **Statute of Limitations**

Defendant seeks to have this Court to limit the applicable statute of limitations to two years. (Def. Br. at 35-36.) Plaintiff opposes, arguing that material facts preclude summary judgment. (Pl. Opp. Br. at 32-35.)

The FLSA operates with a two-tiered statute of limitations. 29 U.S.C § 255(a). The default rule provides for a two-year statute of limitations. Id. If a violation is willful, however, a three-year statute of limitations applies. Id.; Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1105 (3d Cir. 1995). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

Adeva, a decision from this District decided three months ago, granted summary judgment to the defendants in that case due to "the lack of controlling authority in this Circuit, the fact that Defendants had their conduct approved by outside counsel and the proposed DOL

regulations."[3]  No. 09-1096, 2010 WL 97991, at *3.  Because this Court has been presented with different facts than the Adeva court with respect to the approval of Defendant's FWW methodology by outside counsel, and for the reasons discussed above with respect to liquidated damages, this Court declines to grant summary judgment to Defendants on the issue of the statute of limitations.

VI.     **Offsetting Damages for Short Workweeks**

Defendant argues, based on authority from other jurisdictions, that if it loses the benefit of the FWW in calculating damages, it should be able to offset the damages owed to the Plaintiffs by adjusting for the "overpayment" made to Plaintiffs during weeks when a Plaintiff worked less than forty hours.  (Def. Br. at 36-39.)  Plaintiff avers that the FLSA regulations prohibit averaging across workweeks in order to mitigate damages or compute overtime.  (Pl. Opp. Br. at 35-37.)

Defendant seeks to have this Court apply the rule used in Singer v. City of Waco.  324 F.3d 813, 827-28 (5th Cir. 2003).  In Singer, Waco paid its firefighters under a special provision of the FLSA that permitted an employer to choose a "work period" for firefighters ranging from 7 to 28 days in order to avoid the 40-hour week presumption of the FLSA.  324 F.3d at 818, 819.  When calculating damages, the district court found that Waco undercalculated overtime during some work periods and overcalculated overtime in others.  Id. at 826.  After making this

---

[3]The DOL proposed a change to the language of 29 C.F.R. § 778.114 that would have permitted bonus and incentive payments under the FWW.  73 F.R. 43654, 43662 (Jul. 28, 2008).  Although this Court did not find the proposed regulation relevant on the issue of the FWW, as it was promulgated after this suit was filed and the proposed regulation was never adopted, it could be relevant to the issues of liquidated damages and willfulness.  Adeva, No. 09-1096, 2010 WL 97991, at *2-3.

determination, the district court offset the overpayments against the underpayments, and the Fifth Circuit Court of Appeals found that such a calculation was permissible because the overpayments were in the nature of prepayments, rather than illegally delayed payments. Id. at 826-28.

Notably, however, Singer involved both the special firefighter statutory context and overtime being netted against overtime. Id. Here, the Plaintiffs are not firefighters, and Defendant requests that overpayments of regular wages be netted against overtime underpayments. The regulations provide the default rule for offsetting regular pay against overtime across work weeks:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis.

29 C.F.R. § 778.104. This Court finds that the regulation's default use of the forty-hour week for determining overtime and the special legal and factual issues in Singer distinguish that case from the instant one.

This Court similarly finds that the cases adopting Singer are not persuasive. In Monroe Firefighters Assn. v. City of Monroe, the court applied Singer setoffs in the firefighter context and additionally under Louisiana law. No. 06-1092, 2009 WL 916272, at *11-13 (W.D. La. Mar. 31, 2009). This case involves neither firefighters nor any provisions of Louisiana law. Although King v. ITT Education Services, Inc. applies Singer outside of the firefighter context, this Court

finds that the use of one pay period to offset another would violate both 29 C.F.R. § 778.104 and authority within this Circuit. The Third Circuit Court of Appeals rejected an offset of non-premium pay against premium pay in <u>Wheeler v. Hampton Twp.</u>, noting that "the Township seeks a credit for allegedly including non-work pay—presumably at a non-premium rate—in the CBA's basic annual salary. The FLSA does not provide for such an offset." 399 F.3d 238, 245 (3d Cir. 2005). The credit sought by Camin is analogous to that in <u>Wheeler</u>, as it seeks to use the Plaintiffs' non-premium fixed weekly rate to offset premium overtime payments. Furthermore, <u>Wheeler</u> stated that "[w]here a credit is allowed, the statute says so," and Camin is unable to point to a statutory or regulatory provision permitting the offset it seeks. This Court, therefore, denies summary judgment to Camin on the issue of offsetting its damages.

**VII.   Motion to Strike**

As this Court has not relied upon the affidavits Plaintiffs seek to strike, the motion for same is denied as moot at this time. <u>International Bhd. of Boilermakers v. Kelly</u>, 815 F.3d 912, 915 (3d Cir. 1987).

**CONCLUSION**

For the reasons set forth above, this Court finds that Defendant's motion for summary judgment is denied, and that Plaintiffs' motion for summary judgment is granted in part and denied in part. An appropriate order accompanies this Opinion.

DATED: April 20, 2009                                      /s/ Jose L. Linares
                                                            United States District Judge