## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATHAN BRUMLEY, *et al.*, both individually and behalf of all other similarly situated persons,** <br>      **Plaintiffs,** <br><br>   **v.** <br><br> **CAMIN CARGO CONTROL, INC., CARLOS CAMIN, and CLAUDIO CAMIN,** <br>      **Defendants.** | **No. 2:08-cv-1798-JLL-MAH** |
| **IVO JAMES, *et al.*, both individually and behalf of all other similarly situated persons,** <br>      **Plaintiffs,** <br><br>   **v.** <br><br> **CAMIN CARGO CONTROL, INC., CARLOS CAMIN, CLAUDIO CAMIN, and RAUL DAVID,** <br>      **Defendants.** | **No. 2:09-cv-06128-JLL-MAH** |
| **SOLOMON GUEVARA, *et al.*, both individually and behalf of all other similarly situated persons,** <br>      **Plaintiffs,** <br><br>   **v.** <br><br> **CAMIN CARGO CONTROL, INC., CARLOS CAMIN, CLAUDIO CAMIN, AND RAUL DAVID,** <br>      **Defendants.** | **No. 2:10-cv-02461-JLL-MAH** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT AND CONSOLIDATE ACTIONS FOR SETTLEMENT PURPOSES

# Table of Contents

I.   FACTS ................................................................................................ 2

    A.   *Brumley* overtime litigation ................................................... 2

    B.   *James* overtime litigation ...................................................... 3

    C.   *Guevara* overtime litigation .................................................. 4

    D.   Retaliation claims ................................................................... 5

    E.   Unresolved issues ................................................................... 5

    F.   Settlement negotiations ........................................................... 6

    G.   The settlement ......................................................................... 7

        1.   Distribution to Plaintiffs ................................................. 7

        2.   Service payments ............................................................. 9

        3.   Reaction to the settlement ............................................. 10

II.  ARGUMENT ................................................................................... 10

    A.   The settlement is a fair settlement of a bona fide dispute ................. 11

    B.   The Parties have a bona fide dispute ................................... 12

    C.   The Settlement is fair ........................................................... 13

    D.   The Settlement is consistent with public policy ................. 15

    E.   The service payments are reasonable and appropriate .................... 16

    F.   Plaintiffs' three cases should be consolidated ................... 20

III. CONCLUSION ................................................................................ 21

i

## TABLE OF AUTHORITIES

*Ayers v. SGS Control Services, Inc.*, 03 Civ. 9077, 2007 WL 646326
(S.D.N.Y. Feb. 27, 2007) ............................................................................21

*Bradford v. Bed Bath & Beyond, Inc.*, 184 Fed.Supp.2d 1342
(N.D.Ga. 2002) ...........................................................................................17

*Bredbenner v. Liberty Travel, Inc.*,  No. 09-905 (MF), 09-1248 (MF),
09-4587 (MF), 2011 WL 1344745 (D.N.J. April 8, 2011)..................passim

*Buccellato v. AT & T Operations, Inc.*, No. C10–00463–LHK, 2011
WL 4526673 (N.D.Cal. June 30, 2011)...............................................16, 20

*Castagna v. Madison Square Garden, L.P.*, No. 09-10211, 2011 WL
2208614 (S.D.N.Y. June 7, 2011) .............................................................12

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC),
06 Civ. 5672(PAC), 2010 WL 1948198 (S.D.N.Y. May 11,
2010) .........................................................................................12, 14, 21

*Connell v. Liberty Travel,* Civ. No. 09-1248, Doc. No. 82 (D.N.J.
Mar. 5, 2010) ..............................................................................................20

*Cranney v. Carriage Services, Inc.*, No. 2:07-cv-01587-RLH-PAL,
2008 WL 2457912 (D.Nev. June 16, 2008)...............................................17

*D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896 (3d Cir.
1997) ...........................................................................................................15

*Farris v. J.C. Penney, Inc.*, 176 F.3d 706 (3d Cir. 1999)...............................11, 15

*Geer v. Challenge Financial Investors Corp.*, No. 05-1109-JTM, 2007
WL 1341774 (D.Kan. May 4, 2007) .........................................................17

*Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547
(D.N.J. Oct. 13, 2010)......................................................................16, 18, 20

*Hoffman–LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)...................................17

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3d Cir. 2009) ..............18

*In re Insurance Brokerage Antitrust Litigation*, MDL Docket No.
1663, No. 04-5184 (GEB), 2009 WL 411856 (D.N.J. 2009) ....................19

*In re Janney Montgomery Scott LLC Financial Consultant Litigation*,
No. 06-3202, 2009 WL 2137224 (E.D.Pa. July 16, 2009) ........................19

*In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999) .............................................20

*Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376
(S.D.N.Y. Sept. 16, 2011) ........................................................................16

*Louisiana Mun. Police Employees Retirement System v. Sealed Air
Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J.
2009) ................................................................................................16, 19

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ........... 10, 12, 13

*Martin v. Selker Brothers*, 949 F.2d 1286 (3d Cir. 1991) ...................................17

*Martinez-Hernandez v. Butterball, Inc.*, No.5:07-174-H(2), 2008 WL
8658452 (E.D.N.C. Nov. 14, 2008)..........................................................14

*McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448 (D.N.J. 2008)............................19

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ....................11

*Mentor v. Imperial Parking Systems, Inc.*, No. 05 Civ. 7993, 2010 WL
5129068 (S.D.N.Y. Dec. 15 2010) ............................................................19

*Morangelli v. Chemed Corp.*,  275 F.R.D. 99 (E.D.N.Y. 2011)..........................14

*Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010
WL 2889728 (E.D.Cal. July 21, 2010)......................................................20

*Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247
(N.D.Ill. Aug. 3, 2010)..............................................................................17

*Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL
900167 (D.N.J. March 31, 2009)...............................................................19

*Smith v. Lowes Home Centers, Inc.*, 236 F.R.D. 354 (S.D.Oh. 2006).................17

*Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645
(N.D.Cal. Aug. 9, 2010)............................................................................16

*Torres v. Gristede's Operating Corp.*, Nos. 04-CV-3316 (PAC), 08-
    CV-8531 (PAC), 08-CV-9627 (PAC), 2010 WL 5507892
    (S.D.N.Y. Dec. 21, 2010)...........................................................................19

*Velez v. Majik Cleaning Service, Inc.*, No. 03 Civ. 8698(SAS)(KNF),
    2007 WL 7232783 (S.D.N.Y. June 25, 2007) ...........................................16

*Xavier v. Belfor Group USA, Inc.*, Civ. Nos. 06-491, 06-7804, 2008
    WL 4862549 (E.D.La. Sept. 23, 2008).....................................................21

These three actions are Fair Labor Standards Act ("FLSA") collective actions in which a total of 112 Plaintiffs, current and former petroleum inspectors, claim that Camin Cargo and its officers (collectively Camin Cargo) failed to properly pay overtime wages as required under the FLSA, 29 U.S.C. § 201 *et seq*. Five Plaintiffs also allege that Camin Cargo retaliated against them for asserting their FLSA rights. 29 U.S.C. § 215(a). Following extensive litigation in three lawsuits over almost four years, the Parties have negotiated a Settlement Agreement (the "Agreement" attached as Exhibit 2) resolving the claims for the 112 Plaintiffs.

Under the Agreement, each Plaintiff will receive his back wages plus an additional amount to compensate him for not receiving his wages on time. The settlement also resolves retaliation claims on behalf of five Plaintiffs and modest service awards for Plaintiffs that participated in the litigation in an extraordinary manner.

The Parties now seek the Court's approval of the Agreement as required by the FLSA. The Parties respectfully request that the Court consolidate the three actions and approve the Parties' settlement of all three because it represents a fair settlement of a bona fide dispute and strong public policy encourages its approval.

## I.   FACTS

### A.   *Brumley* overtime litigation

A former Camin Cargo petroleum inspector, Plaintiff Nathan Brumley, filed a FLSA lawsuit on April 11, 2008.  He claimed that Camin Cargo's overtime  pay practices violated the FLSA.

The action began with litigation over communications with potential class members.  After those issues were resolved, the Court granted Plaintiffs' motion for conditional certification and notice to the class and discovery ensued.  Plaintiffs served several rounds of document demands and interrogatories, deposed 11 witnesses, and propounded requests to admit.  Dunn Decl. ¶ 2. Plaintiffs also conducted discovery from third parties, including industry organizations and the U.S. Department of Labor.    Dunn Decl. ¶ 3. Defendants propounded several rounds of document requests, two sets of interrogatories, and deposed 11 representative Plaintiffs in Texas and New Jersey.  Dunn Decl. ¶ 4.  Defendants and their agents produced more than 40,000 documents and extensive electronic payroll records.  Dunn Decl. ¶ 5.

The Parties engaged in extensive motion practice.  After Plaintiffs filed a motion for conditional certification, the Parties agreed upon notice to putative class members. Docs. 33, 55-2.   The Court extended the deadline to opt-in after Plaintiffs alleged that Camin Cargo denied several opt-in current employees their

year end bonuses. Doc. 100.  Eventually 64 Plaintiffs joined the *Brumley* litigation. After the opt-in period ended, Plaintiffs sought a Court order to include allow certain people who were not included on the original notice list to be informed of the action and given in the opportunity to join.  Doc. No. 110.  The Parties filed cross motions for summary judgment, Doc. Nos. 137 and 141, and a motion to strike evidence.  Doc. No. 149.  After the summary judgment decision, discovery continued and Plaintiffs moved the Court to compel missing discovery. Doc. 173-1. The Parties filed a joint pretrial order in February 2011.  Doc. 194.  Based on allegations of retaliation, Plaintiffs moved to amend the complaint. Doc 182. Plaintiffs requested and received a default against Defendants when they failed to Answer the Amended Complaint. Docs. 206 and 208.  In addition to the litigation, the Parties provided Magistrate Judge Cecchi with regular case updates and positions on settlement. Dunn Decl. ¶ 7.

**B.     *James* overtime litigation**

Ivo James filed a collective action lawsuit on December 3, 2009.  He claimed that he and others were inspectors just like the *Brumley* class but that Camin Cargo improperly misclassified them as exempt from the FLSA.  James originally brought his claims in the *Brumley* action, but Defendants argued that he and  other field inspectors did not satisfy the class definition of the *Brumley* litigation because they were not paid any overtime wages at all. Because of the risk

that these Plaintiffs would not recover in the *Brumley* action, James brought his claims in a separate action.

The Parties engaged both motion practice and discovery in the *James* action. Defendants moved to dismiss the complaint.  Doc. 16.  As a result, Plaintiffs amended the complaint.  Doc. 37. Plaintiffs then successfully moved for conditional class certification.  Docs. 49 and 54. Plaintiffs also served document demands and interrogatory requests, and deposed Camin Cargo's Saint Croix Operation's Manager.  Dunn Decl. ¶ 9.

## C.   *Guevara* overtime litigation

Solomon Guevara brought another action on behalf of Camin Cargo's inspectors.  Forty-eight Plaintiffs eventually joined the *Guevara* litigation.  Dunn Decl. ¶ 10. The Parties engaged in extensive discovery.  Plaintiffs served document demands and interrogatories, deposed eight witnesses including the corporate Defendant and Defendants' former counsel, and subpoenaed information from third parties. Dunn Decl. ¶ 12.  Defendants propounded document requests and interrogatories on Plaintiffs. Dunn Decl. ¶ 12.

The Parties litigated several motions including a motion for conditional class certification, Doc. No. 33, an Order to Show Cause based on retaliation, Doc. No. 35, a motion to amend the complaint, Doc. No. 59, and a motion to compel discovery, Doc. No. 75.

**D.     Retaliation claims**

Throughout the litigation, the parties litigated allegations of retaliation and improper class communications.  At the outset of the *Brumley* litigation, the Parties raised allegations of improper communications to Magistrate Judge Cecchi.  Doc. No. 20.  After the Court authorized notice to the *Brumley* class, Plaintiffs sought injunctive relief based on allegations of retaliation chilling participation in the collective action.  Doc. No. 83. As a result, the Court re-opened the opt-in period and ordered supplemental notice.  Doc. No. 100.

Plaintiffs moved to amend the *Brumley* complaint based on allegations of retaliation that included the firing of one of the prominent Plaintiffs, the failure to hire a former inspector, and the denial of bonuses to several inspectors. Doc 182. In *Guevara*, Plaintiffs, brought an order to show cause to reinstate the named Plaintiff to work. Doc. 35. Plaintiffs then amended the complaint to include Guevara's retaliation claims. Doc. 59.

**E.     Unresolved issues**

Although the Court ruled on summary judgment in the *Brumley* case that Defendants had violated the FLSA and were required to pay back overtime wages, many issues remain unresolved.   The Parties disagree as to the statute of limitations to be applied to claims.  Dunn Decl. ¶ 14. The FLSA provides for a two-year statute of limitations unless the employee can show that the employer

acted willfully. 29 U.S.C. § 255.  Plaintiffs argue that Defendants are liable for a third year of claims because they willfully violated the FLSA while Defendants contend they acted in good faith.  Dunn Decl. ¶ 14.  The FLSA also provides for liquidated damages unless the employer can show that it acted in good faith reliance on a reasonable interpretation of the law.   29 U.S.C. §§ 216(b), 260. Plaintiffs argue that Defendants are liable for the full measure of liquidated damages while Defendants argue that they meet the exception.  Dunn Decl. ¶ 15. The Parties disagree on the amount of hours Plaintiffs worked and the formula for calculating damages.  Dunn Decl. ¶ 16.  Plaintiffs also brought retaliation claims which Defendants deny.   Dunn Decl. ¶ 17. And despite the Court's summary judgment ruling, Defendants retain the ability to argue on appeal that their method of paying overtime complied with the FLSA. Dunn Decl. ¶ 18.

**F.    Settlement negotiations**

Throughout the nearly four years of litigation the Parties continually engaged in settlement negotiations.    At the outset of the litigation, Plaintiffs developed detailed damages spreadsheets and the Parties exchanged settlement demands and revised damage calculations on several occasions.  Dunn Decl. ¶ 19. The Parties had in person settlement discussions among themselves on April 13, and June 29, 2009, and again on April 26, June 22-23, September 3, October 1, and October 5, 2010.  Dunn Decl. ¶ 21. The Parties attended settlement negotiations

before the Court on July 22, September 7, and November 3, 2010.  Dunn Decl. ¶ 22. The Parties then engaged John Sands, a professional mediator experienced in wage-and-hour issues, and met with him for full-day mediation sessions on September 6 and 15, 2011.  Dunn Decl. ¶ 23.  In each case, the Parties prepared detailed damage calculations and/or written position statements to assist in the negotiations.  Dunn Decl. ¶ 24.  More than three months later, after substantial additional settlement conversations and correspondence, the Parties negotiated the attached Settlement Agreement. Ex. 2; Dunn Decl. ¶ 25.

## G.    The settlement

After almost four years of hard fought litigation and continuing negotiation, the Parties have agreed to settle all claims in these three collective actions for $3,900,000.   Dunn Decl. ¶ 26. The Parties memorialized their terms of the settlement in the attached Agreement. The Agreement reflects a compromise between the Parties, with each Party taking into account a wide range of possible outcomes that would be impacted by factual and legal issues to be determined at trial, and the time and expense of litigating to a final judgment. Dunn Decl. ¶ 27.

### 1.  Distribution to Plaintiffs

Under the Agreement, Plaintiffs will receive their full unpaid back wages calculated using the default FSLA damages calculation of time-and-a-half for all hours over 40; the calculation applied by the Court in the *Brumley* summary

judgment decision.  Doc. No. 167 at p. 14; Dunn Decl. ¶ 28.  The calculation will use payroll records from Defendants' third-party payroll servicer, ADP, to determine weekly compensation and use Plaintiffs' daily time records to determine the overtime hours worked. Dunn Decl. ¶ 29.  Plaintiffs will also receive an additional amount in liquidated damages to compensate them for not having received their wages on time.  Dunn Decl. ¶ 30.  All Plaintiffs will receive a minimum of $500.  Dunn Decl. ¶ 31.  Five Plaintiffs will also recover for their retaliation claims.  Dunn Decl. ¶ 32.  All the Plaintiffs will receive their individual recoveries net of attorneys' fees, costs, and service payments to representatives. Dunn Decl. ¶ 33.

Attorneys' fees under the Agreement are $1,300,000 or one-third of the total settlement.  These fees are consistent with the Plaintiffs fee agreement with counsel as expressed in the Court-approved Consent to be Party Plaintiff form, and they are comparable to the attorneys' actual billings in this case.  Dunn Decl. ¶¶ 48-50; Sweeney Declaration filed in support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ¶¶ 62-63. The fee agreement is also consistent with common fund fee awards in wage-and-hour cases in this district.  Litigation costs are also deducted from the gross settlement amount. Dunn Decl. ¶ 53.

## 2. Service payments

The Agreement provides that Plaintiffs will seek modest service payments for certain Plaintiffs' extraordinary assistance and role in the litigation without objection from Defendants.  The seven named Plaintiffs in these three cases were critical to bringing this case to a successful conclusion for 112 Plaintiffs who were improperly paid under the FLSA.  Dunn Decl. ¶ 34. They participated in the discovery process, including depositions, and they provided declarations, attended settlement conferences, and worked with Plaintiffs' counsel to prepare and prosecute the case.  Dunn Decl. ¶ 35. By lending their names to the litigation, they all risked bearing costs of the litigation and retaliation.  Dunn Decl. ¶ 36.  Plaintiffs seek a $5,000 service payment for each of the named Plaintiffs. Dunn Decl. ¶ 37.

Plaintiffs also seek service payments of $1,000 for eight additional Plaintiffs for their service.[1]  All these Plaintiffs attended depositions and/or attended a Court ordered settlement conference.  Dunn Decl. ¶ 38.  Delince Francois, Johnny Pancake, Jason Desselle, Rogelio Mendoza, Daryl Tucker, and Evan Cranford sat for deposition in this action and spent a substantial amount of time preparing for their testimony.  Dunn Decl. ¶ 39. They also produced documents and provided detailed interrogatory responses. Dunn Decl. ¶ 40.  Many were required to take time off from work to attend.   Two of these Plaintiffs, Clarence Eason and

---

[1] If a plaintiff qualifies for more than one service payment, then the plaintiff will receive the higher of the payment.

German Villamar, took time off of work to attend the settlement conference in Newark, New Jersey.  Clarence Eason travelled from Texas to attend.  Dunn Decl. ¶ 41. Both remained involved in the settlement process through advising counsel and participating via telephone when necessary. Dunn Decl. ¶ 42.  As provided in the Agreement, Plaintiffs seek a $1,000 service payment for each of these eight Plaintiffs.  Dunn Decl. ¶ 43.

### 3. Reaction to the settlement

All of the Plaintiffs with whom counsel has spoken to date favor the Settlement Agreement.  Dunn Decl. ¶ 44. This includes all the named Plaintiffs and many other class members.   Dunn Decl. ¶ 45. The support for the settlement among these Plaintiffs has been unanimous.   Dunn Decl. ¶ 46. And while Plaintiffs' counsel recommends the settlement, each Plaintiff has the opportunity to opt-out and pursue his claim individually. Dunn Decl. ¶ 47.

Overall, this is an excellent settlement for a hard working group of Plaintiffs.

## II.    ARGUMENT

Settlement of private actions for back wages and retaliation claims pursuant to 29 U.S.C. § 216(b) must be approved by the district court.  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).  The decision of whether to approve a collective action settlement lies within the trial court's discretion.  *Id.* at 1350.  When exercising its discretion, the court should be mindful of the strong

10

presumption in favor of finding a settlement fair. *See Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999) ("A strong public policy exists in favor of settlement").

**A.     The settlement is a fair settlement of a bona fide dispute**

Where FLSA claims are brought as a "collective action," each employee must affirmatively "opt-in" to the litigation, unlike the procedure under Federal Rule of Civil Procedure 23. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, *18 (D.N.J. April 8, 2011) ("Unlike a traditional class action under Rule 23, potential class members in an FLSA collective action must affirmatively opt-in to be bound by the judgment.") (internal citations omitted). Because, under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984). "Thus, the Court does not assume the same 'fiduciary' role to protect absent class members as it would under Rule 23 when assessing a proposed settlement resolving FLSA claims" and the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. *Bredbenner*, 2011 WL 1344745, *18.

The Court's role in approving a settlement of FLSA claims is to ensure that it represents a fair settlement of a bona fide dispute. *Bredbenner*, 2011 WL 1344745, *18. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54; *Bredbenner*, 2011 WL 1344745, *18; *Clark v. Ecolab Inc.*, Nos. 07-8623, 04-4488, 06-5672, 2010 WL 1948198, *7 (S.D.N.Y. May 11, 2010). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id. See also*, *Castagna v. Madison Square Garden, L.P.*, No. 09-10211, 2011 WL 2208614, *4 (S.D.N.Y. June 7, 2011) ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.")

## B.    The Parties have a bona fide dispute

This Agreement settles several disputed legal and factual issues. While the Court resolved two of the issues on summary judgment in the *Brumley* case, many issues are still in dispute in all three cases. The Parties have yet to resolve the appropriate statute of limitations to apply, whether Defendants are liable for liquidated damages, and if so, in what amount, the amount of hours Plaintiffs worked, the formula for calculating damages, whether retaliation occurred, and the correct measure of damages for all these claims. Moreover, Defendants retain the

ability appeal the Court's summary judgment ruling on liability. Thus, there are bona fide disputes between the Parties. *Bredbenner*, 2011 WL 1344745, 18.

## C.      The Settlement is fair

The terms of the Parties' Agreement are fair.  Courts look to the adversarial nature of a case as an indicator of the fairness of the settlement.   *Lynn's Food Stores*, 679 F.2d at 1353-54; *Bredbenner*, 2011 WL 1344745, *18; *Clark*, 2010 WL 1948198, *7.  This settlement is the result of nearly four years of hard fought litigation and several attempts at settlement.  The litigation involved overtime claims of 112 Plaintiffs working in 11 different offices in seven states, including the Virgin Islands.  Five Plaintiffs brought additional claims for retaliation. Litigation of the FLSA issues involved pleadings, amended pleadings, and motions for conditional certification and notice in the three cases, and the Parties submitted a pre-trial order in the *Brumley* case.  Discovery took place over nearly four years. It involved tens of thousands of pages of discovery, dozens of depositions, multiple sets of interrogatories, and multiple motions to the Court to resolve disputes.  The Parties also litigated issues of improper communications and retaliation on several different occasions.  The hard fought nature of these three actions establishes that the settlement is fair.  *Id*.

The Parties settlement negotiations also indicate fairness.  Courts recognize that the participation of an experienced independent mediator "virtually insures

13

that the negotiations were conducted at arm's length and without collusion between the parties." *Bredbenner*, 2011 WL 1344745, *10; *see also*, *Clark*, 2010 WL 1948198, *7 (settlement of contested issues through mediation before an experienced mediator indicates fairness). From the outset of the litigation, the Parties engaged in settlement negotiations and were represented by counsel in the negotiations. In additional to the efforts of experienced counsel, both the Court and an experienced wage-and-hour mediator, John Sands, participated in extensive settlement negotiations. Based on those negotiations, the Parties finally consummated a settlement agreement on December 22, 2011. The on-going negotiations and the involvement of independent mediators ensure the settlement's fairness. *Id*.

The settlement carries other indicia of fairness. The reaction of every Plaintiff who has spoken with counsel has been positive. Not a single Plaintiff thought that the settlement is less than fair. Dunn Decl. ¶ 45-46. Throughout the process, Plaintiffs were represented by competent counsel experience in wage-and-hour class litigation. *See*, *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to be competent class counsel in a wage-and-hour litigation); *Bredbenner*, 2011 WL 1344745, *8 (same); *Clark*, 2010 WL 1948198, *4 (same); *Martinez-Hernandez v. Butterball, Inc.*, No.5:07-174-H(2), 2008 WL 8658452, *5 (E.D.N.C. Nov. 14, 2008) (same). The

settlement was consummated after a substantial discovery and litigation so that the Parties were fully informed of the legal issues and evidence.  As a result of the settlement, the Plaintiffs receive full payment for their back overtime wages for three years plus liquidated damages.  They receive that recovery net of attorneys' fees, costs, and any service payments to representatives.  And they receive that money now, avoiding the risks and delay inherent in continued litigation.  Each of these factors strongly suggests that the settlement is fair; together they establish fairness.  *Bredbenner*, 2011 WL 1344745, *10-*15.

**D.     The Settlement is consistent with public policy**

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlement.  "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."  *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).  This settlement is consistent with that policy because it resolves three pending cases on behalf of 112 Plaintiffs and four Defendants involving overtime and retaliation claims, and multiple legal and factual issues.  And the settlement avoids three jury trials.  Because the settlement represents a fair settlement of a bona fide dispute, public policy weighs heavily in favor of approval.  *Id.*, *Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999).

### E.      The service payments are reasonable and appropriate

Service payments are the norm in wage-and- hour class litigation. *Bredbenner*, 2011 WL 1344745, *23; *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, *21 (S.D.N.Y. Sept. 16, 2011); *Buccellato v. AT & T Operations, Inc.*, No. C10–00463–LHK, 2011 WL 4526673 (N.D.Cal. June 30, 2011).   The purpose of the service payments is to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of the litigation. *Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, *13 (D.N.J. Oct. 13, 2010). The payments compensate for services such as "participating in telephone conversations, collecting documents, answering interrogatories, preparing for and attending depositions, being willing to testify at trial". *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546, 610 (D.N.J. 2010); *see also*, *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, No. 03-CV-4372, 2009 WL 4730185, *10 (D.N.J. 2009).   Service payments also compensate for "the risk to the class representative in commencing suit, both financial and otherwise [and] the notoriety and personal difficulties." *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, *7 (N.D.Cal. Aug. 9, 2010).   In the employment context in particular, a named plaintiff takes a significant risk to his or her reputation in the industry.  *Velez v. Majik Cleaning Service, Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, *7 (S.D.N.Y. June 25, 2007).

Representatives in FLSA collective actions warrant the award of a service payment just as those in a Rule 23 class action. A FLSA collective action is a class action. The distinction between it and a Rule 23 class is that the plaintiffs opt-into a collective action. *Hoffman–LaRoche Inc. v. Sperling*, 493 U.S. 165, 170-173 (1989). Litigation in a large collective action like this is typically conducted through representative plaintiffs. *See e.g* , *Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247, *5 (N.D.Ill. Aug. 3, 2010); *Cranney v. Carriage Services, Inc.*, No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, *3 (D.Nev. June 16, 2008); *Geer v. Challenge Financial Investors Corp.*, No. 05-1109-JTM, 2007 WL 1341774, *5 (D.Kan. May 4, 2007); *Smith v. Lowes Home Centers, Inc.*, 236 F.R.D. 354, 357–358 (S.D.Oh. 2006); *Bradford v. Bed Bath & Beyond, Inc.*, 184 Fed.Supp.2d 1342, 1344 (N.D.Ga. 2002). Similarly, not each and every plaintiff or opt-in plaintiff must testify at trial to prove liability or damages. *Martin v. Selker Brothers*, 949 F.2d 1286, 1298 (3d Cir. 1991).

The Named Plaintiffs and discovery representatives in these actions performed the same services and took the same risks as representatives in a Rule 23 class action. Named Plaintiffs' services began with their initiative in filing the federal claims as collective actions that allowed more other inspectors to recover unpaid wages. Both the named Plaintiffs and discovery plaintiffs represented the class by participating in discovery and settlement negotiations, offering testimony,

working with Plaintiffs' counsel to develop the case and model damage calculations, and ultimately concluding a successful settlement for the class. Although trial was unnecessary, they were all prepared to testify at trial, and they actively participated in settlement conferences, mediation, and settlement negotiations. The Named Plaintiffs also assumed substantial risks in bringing the litigation.  Some of the Named Plaintiffs remain in the petroleum inspection industry.  By suing a major player in that industry, they risked their good reputations in the industry—a risk other opt-in Plaintiffs were not required to bear. The Named Plaintiffs also risked being held responsible for litigation costs should they not have been successful; another risk they bore themselves. Thus, they should be compensated for their services and the risks they bore in bringing these actions.  *Hall*, 2010 WL 4053547, *13.

The service payments are well within the range of such payments in this District and in wage-and-hour cases.  Under the agreement each Named Plaintiff will receive $5,000 and each Plaintiff that participated in the Court ordered settlement or were deposed will receive $1,000.[2]  Numerous courts in this District have awarded service payments equal to or higher than that proposed here. *See, e.g., In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 282, 284 (3d Cir. 2009) (affirming $10,000 service payment); *Bredbenner*, 2011 WL 1344745, *2-

_____

[2] If a plaintiff qualifies for more than one service payment, then the plaintiff will receive the higher of the payment.

18

25 (granting service payments of $10,000 each to eight representatives); *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546, 609-610 (D.N.J. 2010) (awarding $10,000 service payment); *Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *6 (D.N.J. March 31, 2009) (Court awarded 15 named plaintiffs a total of $195,000); *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185, *10 (D.N.J. 2009) ($25,000 service payment); *In re Insurance Brokerage Antitrust Litigation*, MDL Docket No. 1663, No. 04-5184 (GEB), 2009 WL 411856, *10 (D.N.J. 2009) ($10,000 service payment); *McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448, 479 (D.N.J. 2008) ($60,000 service payment).

The service payments are also within the range granted in other wage-and-hour cases. *See*, *e.g.*, *Bredbenner*, 2011 WL 1344745, *22-24 (granting service payments of $10,000 each to eight representatives); *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, No. 06-3202, 2009 WL 2137224, *12 (E.D.Pa. July 16, 2009) ($20,000 service payment in FLSA and Pennsylvania wage and hour case); *Mentor v. Imperial Parking Systems, Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, *1 (S.D.N.Y. Dec. 15, 2010) (awarding a $40,000 and $15,000 service payment in New York Labor Law class action and FLSA case); *Torres v. Gristede's Operating Corp.*, Nos. 04-CV-3316 (PAC), 08-CV-8531 (PAC), 08-CV-9627 (PAC), 2010 WL 5507892, *7 (S.D.N.Y. Dec. 21, 2010) ($15,000

service payment in New York Labor Law class action and FLSA case); *Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, *12 (E.D.Cal. July 21, 2010) ($10,000 enhancement payment for class action under California law and the FLSA); *Clark*, 2010 WL 1948198, *9 (awarding $10,000 service payment to named plaintiffs for various state class actions and FLSA wage and hour cases); *Buccellato v. AT & T Operations, Inc.*, No. C10–00463–LHK, 2011 WL 4526673 (N.D.Cal. June 30, 2011) ($20,000 to named plaintiff and $5,000 to each class representative).

As the service payments sought are both reasonable and appropriate, the Court should approve the request.  *Hall*, 2010 WL 4053547, *13; *Bredbenner*, 2011 WL 1344745, *22-*24.

**F.    Plaintiffs' three cases should be consolidated**

Plaintiffs request that the Court consolidated the *Brumley*, *James*, and *Guevara* actions for purposes of settlement.  Federal Rule of Civil Procedure 42 allows courts to consolidate actions where they involve common questions of law or fact.   Consolidation is intended to "streamline and economize pretrial proceedings so as to avoid duplication of effort".  *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999).  Where FLSA actions involve common underlying facts or law, consolidation is appropriate.  *See, e.g., Connell v. Liberty Travel,* Civ. No. 09-1248, Doc. No. 82 (D.N.J. Mar. 5, 2010)*; Xavier v. Belfor Group USA,*

*Inc.*, Civ. Nos. 06-491, 06-7804, 2008 WL 4862549, *1 (E.D.La. Sept. 23, 2008) (noting the consolidation of FLSA actions); *Ayers v. SGS Control Services, Inc.*, 03 Civ. 9077, 2007 WL 646326, *2 (S.D.N.Y. Feb. 27, 2007) (same).

These three FLSA collective actions involve common defendants, common claims, and a common class of employees. The Agreement resolves all three actions on a common basis. Consolidating them for purposes of the settlement would streamline and economize proceedings by allowing a single judgment to resolve all three cases. *See, e.g., Clark*, 2009 WL 6615729, 1 (resolving three FLSA actions in a single settlement approval order).

Accordingly, Plaintiffs request that the Court consolidate these actions for purposes of settlement.

## III.   CONCLUSION

The Agreement is a fair settlement of a bona fide dispute and strong public policy encourages its approval. Plaintiffs respectfully request that the Court consolidate these three cases for purposes of settlement, grant approval of the settlement as an adequate, fair, and reasonable settlement of the Plaintiffs' interests, and approve the service payments to certain Plaintiffs.

Respectfully submitted this 31st day of January 2012.

Michael J.D. Sweeney

21

Matthew Dunn
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, New York 12561
(845) 255-9370
msweeney@getmansweeney.com
mdunn@getmansweeney.com

Patrick J. Monaghan, Jr.
Beattie Padovano, LLC
50 Chestnut Ridge Road
Montvale, New Jersey 07645
Tel: (201) 573-1810


COUNSEL FOR PLAINTIFFS

22