UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHAN BRUMLEY, *et al.*, both individually and behalf of all other similarly situated persons,<br>                    Plaintiffs,<br><br>        v.<br><br>CAMIN CARGO CONTROL, INC., CARLOS CAMIN, and CLAUDIO CAMIN,<br>                    Defendants. | No. 2:08-cv-1798-JLL-MAH |
| IVO JAMES, *et al.*, both individually and behalf of all other similarly situated persons,<br>                    Plaintiffs,<br><br>        v.<br><br>CAMIN CARGO CONTROL, INC., CARLOS CAMIN, CLAUDIO CAMIN, and RAUL DAVID,<br>                    Defendants. | No. 2:09-cv-06128-JLL-MAH |
| SOLOMON GUEVARA, *et al.*, both individually and behalf of all other similarly situated persons,<br>                    Plaintiffs,<br><br>        v.<br><br>CAMIN CARGO CONTROL, INC., CARLOS CAMIN, CLAUDIO CAMIN, AND RAUL DAVID,<br>                    Defendants. | No. 2:10-cv-02461-JLL-MAH |

**DECLARATION OF MATTHEW DUNN**

1

I, Matthew Dunn, declare that I am an associate in the firm of Getman & Sweeney, PLLC ("Getman & Sweeney") in New Paltz, New York, Plaintiffs' Counsel herein. Getman & Sweeney is a firm that focuses on representing plaintiffs in individual and class-wide violations of wage-and-hour laws. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims in these cases. I make the following statements based on personal knowledge and would so testify if called as a witness at trial.

### *Brumley* overtime litigation

1. A former Camin Cargo petroleum inspector, Plaintiff Nathan Brumley, filed a FLSA lawsuit on April 11, 2008. He claimed that Camin Cargo's overtime pay practices violated the FLSA.

2. The action began with litigation over communications with potential class members. After those issues were resolved, the Court granted Plaintiffs' motion for conditional certification and notice to the class and discovery ensued. Plaintiffs served several rounds of document demands and interrogatories, deposed 11 witnesses, and propounded requests to admit.

3. Plaintiffs also conducted discovery from third parties, including industry organizations and the U.S. Department of Labor.

4. Defendants propounded several rounds of document requests, two sets of interrogatories, and deposed 11 representative Plaintiffs in Texas and New

Jersey. In order to respond to Defendants' discovery demands and defend the depositions, Plaintiffs' counsel had extensive discussions with Plaintiffs and thoroughly reviewed Plaintiffs' documents.

5. Defendants and their agents produced more than 40,000 documents and extensive electronic payroll records.

6. After Plaintiffs filed a motion for conditional certification, the Parties agreed upon notice to putative class members. Docs. 33, 55-2. The Court extended the deadline to opt-in after Plaintiffs alleged that Camin Cargo denied several opt-in current employees their year end bonuses. Doc. 100. Eventually 64 Plaintiffs joined the *Brumley* litigation. After the opt-in period ended, Plaintiffs sought a Court order to include allow certain people who were not included on the original notice list to be informed of the action and given in the opportunity to join. Doc. No. 110. The Parties filed cross motions for summary judgment, Doc. Nos. 137 and 141, and a motion to strike evidence. Doc. No. 149. After the summary judgment decision, discovery continued and Plaintiffs moved the Court to compel missing discovery. Doc. 173-1. The Parties filed a joint pretrial order in February 2011. Doc. 194. Plaintiffs' counsel also responded to Camin Cargo counsel's motion to withdraw as counsel. Based on allegations of retaliation, Plaintiffs moved to amend the complaint. Doc 182. Plaintiffs

requested and received a default against Defendants when they failed to Answer the Amended Complaint. Docs. 206 and 208.

7. The Parties also provided Magistrate Judge Cecchi with regular case updates and positions on settlement.

### *James* overtime litigation

8. Ivo James filed a collective action lawsuit on December 3, 2009. He claimed that he and others were inspectors just like the *Brumley* class but that Camin Cargo improperly misclassified them as exempt from the FLSA. James originally brought his claims in the *Brumley* action, but Defendants argued that he and other field inspectors did not satisfy the class definition of the *Brumley* litigation because they were not paid any overtime wages at all. Because of the risk that these Plaintiffs would not recover in the *Brumley* action, James brought his claims in a separate action. Including James, three people joined the *James* litigation.

9. The Parties engaged both motion practice and discovery in the *James* action. Defendants moved to dismiss the complaint. Doc. 16. As a result, Plaintiffs amended the complaint. Doc. 37. Plaintiffs then successfully moved for conditional class certification. Docs. 49 and 54. Plaintiffs also served document demands and interrogatory requests, and deposed Camin Cargo's Saint Croix Operation's Manager.

### *Guevara* overtime litigation

10. Solomon Guevara brought another action on behalf of Camin Cargo's inspectors on May 14, 2010. Plaintiffs filed the *Guevara* case because the opt-in and discovery period in *Brumley* had expired. Forty-eight Plaintiffs eventually joined the *Guevara* litigation.

11. The Parties litigated several motions including an Order to Show Cause based on retaliation and a motion to compel discovery. Docs. 35, 75 Plaintiffs successfully moved for conditional class certification. Doc. 33. Plaintiffs also amended the complaint. Doc. 59.

12. Plaintiffs served document demands and interrogatories, deposed eight witnesses including the corporate Defendant and Defendants' former counsel, and subpoenaed information from third parties. Defendants propounded document requests and interrogatories on Plaintiffs. Plaintiffs' counsel also negotiated a protocol for conducting discovery for electronically stored information. As a result Plaintiffs' counsel received and reviewed numerous emails, excel spreadsheets, word and .pdf documents. Plaintiffs' counsel also prepared to defend four additional depositions that were not taken.

13. For all three cases, Plaintiffs' counsel kept Plaintiffs informed of the status of the cases through letters, e-mails, and website updates. Counsel responded to

frequent phone calls and e-mails from individual Plaintiffs inquiring about the status of the case and settlement negotiations.

**Unresolved issues**

14. The Parties disagree as to the statute of limitations to be applied to claims. The FLSA provides for a two-year statute of limitations unless the employee can show that the employer acted willfully. 29 U.S.C. § 255. Plaintiffs argue that Defendants are liable for a third year of claims because they willfully violated the FLSA while Defendants contend they acted in good faith.

15. The FLSA also provides for liquidated damages unless the employer can show that it acted in good faith reliance on a reasonable interpretation of the law. 29 U.S.C. §§ 216(b), 260. Plaintiffs argue that Defendants are liable for the full measure of liquidated damages while Defendants argue that they meet the exception.

16. The Parties disagree on the amount of hours Plaintiffs worked and the formula for calculating damages.

17. Plaintiffs also brought retaliation claims which Defendants deny.

18. And despite the Court's summary judgment ruling, Defendants retain the ability to argue on appeal that their method of paying overtime complied with the FLSA.

**Settlement negotiations**

19. At the outset of the litigation, Plaintiffs developed detailed damages spreadsheets and the Parties exchanged settlement demands and revised damage calculations on several occasions.

20. The spreadsheets contained the overtime hours Plaintiffs worked and the wages they received. These spreadsheets were developed based on Defendants' wage-and-hour records. Because many of the hours records were kept in paper format, Plaintiffs' counsel had the onerous task of transcribing time records from paper into an excel spreadsheet. Plaintiffs' counsel incorporated the electronic wage and hours records into one spreadsheet. This was a complicated and time consuming task. It required extensive computer programming, double checking formulas and data entries, and creating spreadsheets for Defendants use and review and spreadsheets for Plaintiffs' use.

21. The Parties had in person settlement discussions among themselves on April 13, and June 29, 2009, and again on April 26, June 22-23, September 3, October 1, and October 5, 2010.

22. The Parties attended settlement negotiations before the Court on July 22, September 7, and November 3, 2010.

23. The Parties then engaged John Sands, a professional mediator experienced in wage-and-hour issues, and met with him for full-day mediation sessions on September 6 and 15, 2011.

24. In each case, the Parties prepared detailed damage calculations and/or written position statements to assist in the negotiations.

25. More than three months later, after substantial additional settlement conversations and correspondence, the Parties negotiated a Settlement Agreement.

**The Settlement agreement**

26. The Parties have agreed to settle all claims in these three collective actions for $3,900,000.

27. The Parties memorialized their terms of the settlement in the Agreement. The Agreement reflects a compromise between the Parties, with each Party taking into account a wide range of possible outcomes that would be impacted by factual and legal issues to be determined at trial, and the time and expense of litigating to a final judgment.

**Distribution to Plaintiffs**

28. Under the Agreement, Plaintiffs will receive their full unpaid back wages calculated using the default FSLA damages calculation of time-and-a-half for all hours over 40.

29. The calculation will use payroll records from Defendants' third-party payroll servicer, ADP, to determine weekly compensation and use Plaintiffs' daily time records to determine the overtime hours worked.

30. Plaintiffs will also receive an additional amount in liquidated damages to compensate them for not having received their wages on time.

31. All Plaintiffs will receive a minimum of $500.

32. Five Plaintiffs will also recover for their retaliation claims.

33. All the Plaintiffs will receive their individual recoveries net of attorneys' fees, costs, and service payments to representatives.

**Service payments**

34. The seven named Plaintiffs in these three cases were critical to bringing this case to a successful conclusion for 112 Plaintiffs who were improperly paid under the FLSA.

35. They participated in the discovery process, including depositions, and they provided declarations, attended settlement conferences, and worked with Plaintiffs' counsel to prepare and prosecute the case.

36. By lending their names to the litigation, they all risked bearing costs of the litigation and retaliation.

37. Plaintiffs seek a $5,000 service payment for each of the named Plaintiffs.

38. Plaintiffs also seek service payments of $1,000 for eight additional Plaintiffs for their service. All these Plaintiffs attended depositions and/or attended a Court ordered settlement conference. If a Plaintiff qualifies for more than one service payment, then the plaintiff will receive the higher of the payment.

39. Delince Francois, Johnny Pancake, Jason Desselle, Rogelio Mendoza, Daryl Tucker, and Evan Cranford sat for deposition in this action and spent a substantial amount of time preparing for their testimony.

40. They also produced documents and provided detailed interrogatory responses.

41. Two of these Plaintiffs, Clarence Eason and German Villamar, took time off of work to attend the settlement conference in Newark, New Jersey. Clarence Eason travelled from Texas to attend.

42. Clarence Eason and German Villamar remained involved in the settlement process through advising counsel and participating via telephone when necessary.

43. As provided in the Agreement, Plaintiffs seek a $1,000 service payment for each of these eight Plaintiffs.

**Plaintiffs' reaction to the Settlement**

44. All of the Plaintiffs with whom counsel has spoken to date favor the Settlement Agreement.

45. This includes all the named Plaintiffs and many other class members.

46. The support for the settlement among these Plaintiffs has been unanimous.

47. And while Plaintiffs' counsel recommends the settlement, each Plaintiff has the opportunity to opt-out, he may opt-out and pursue his claim individually.

**Billings to date**

48. Each of the Plaintiffs signed a consent to sue or a retainer that contained the following language or language substantially similar:

> By signing and returning this consent to sue, I understand that, if accepted for representation, I will be represented by the above Counsel without prepayment of costs or attorneys' fees. I understand that if plaintiff is succesful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment amount on a pro rata basis with all other plaintiffs. I understand Counsel may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by Counsel will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater.

49. The named Plaintiffs agreed to the same fee arrangement.

50. Attorneys' fees under the Agreement are $1,300,000 or one-third of the total settlement. These fees are consistent with the Plaintiffs fee agreement with counsel as expressed in the Court-approved Consent to be Party Plaintiff form, and they are comparable to the attorneys' actual billings in this case.

51. Counsel has spent approximately 5,200 attorney and staff hours to date litigating these three collective actions over almost four years.

52. The resulting lodestar, that is the hours worked multiplied by billing rates, is $1,368,195.25. Sweeney Decl., ¶ 63.

11

**Costs to date**

53. Litigation costs are also deducted from the gross settlement amount.

54. The Settlement Agreement provides that Plaintiffs' counsel is entitled to recover its costs from the settlement fund. Each Plaintiff acknowledged that he understood that Plaintiffs' counsel would seek costs and expenses as explained in the Consent to Sue form.

55. Accordingly, Plaintiffs' counsel seeks reimbursement of costs and expenses in the amount of $37,778.75. Sweeney Decl., ¶ 64.

**Work after the Settlement**

56. Plaintiffs' counsel will spend substantial additional time administering the settlement going forward and agreed to limit fees at one-third of the settlement. This results in counsel receiving less than its lodestar fees because Plaintiffs' counsel will continue to perform work throughout and after the final payment to Plaintiffs.

57. Plaintiffs' counsel will mail the first installment along with a copy of the settlement agreement to each of the 112 Plaintiffs. Plaintiffs' counsel will respond to Plaintiffs' telephone calls and emails about the settlement. For Plaintiffs that do not receive their settlement payments, Plaintiffs' counsel will need to track them down so that they can receive their checks. Further, because some Plaintiffs speak Spanish, Plaintiffs' counsel must translate the settlement

agreement into Spanish. Then in April 2012 Plaintiffs' counsel will mail the second payment to Plaintiffs– assuming there's no appeal. Finally, there may be some lingering questions that Plaintiffs' counsel will have to answer over the next and potentially beyond. Plaintiffs' counsel estimates that this additional work will result in an additional reduction in the lodestar.

Dated: January 31, 2012
New Paltz, New York

Matthew Dunn (*PHV*)

13